THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

REGINALD DAVID LUNDY,

Petitioner,

v.

JOHN YOST,

Respondent.

HON. JEROME B. SIMANDLE

Civil No. 07-4180 (JBS)
[Relates to Cr. No. 03-354-02 (JBS)]

**OPINION**

APPEARANCES:

Mr. Reginald David Lundy
#40561-066
Federal Correctional Institution, Loretto
P.O. BOX 1000
Loretto, PA 15940
Petitioner pro se

Norman Joel Gross, AUSA
Paul A. Blaine, AUSA
Office of the U.S. Attorney
401 Market Street
Fourth Floor
Camden, NJ 08101
Attorneys for Respondent John Yost

**SIMANDLE**, District Judge:

On June 7, 2004, this Court issued an Order (the "Contempt Order"), Cr. No. 03-354-02 (JBS) [Docket Item 242] finding Petitioner Reginald David Lundy in civil contempt of its August 27, 2003 Order [Docket Item 107] enjoining the petitioner from sending harassing documents to the undersigned, as well as to various persons affiliated with the Court. Under the terms of the Contempt Order, Petitioner was incarcerated until he purged

himself of his contempt by, inter alia, affirming in writing that he would cease sending similar documents. Petitioner has been incarcerated since the issuance of the Contempt Order.[1]

On August 31, 2007, Mr. Lundy filed a petition for a writ of habeas corpus [Docket Item 1] pursuant to 28 U.S.C. § 2241. Among the points argued by the petitioner is his claim that the undersigned should recuse himself from considering the instant petition on the grounds of alleged bias and lack of impartiality. Before it can address the merits of Mr. Lundy's petition, the Court must address the threshold question of whether it must recuse itself from considering Mr. Lundy's petition altogether on account of the bias that Mr. Lundy alleges. For the reasons

---

[1] Mr. Lundy was tried and convicted upon multiple counts of conspiracy to procure and pass false and fictitious money orders in violation of 18 U.S.C. § 371 (Count 1) and possessing or passing false financial instruments purporting to be issued under the authority of the United States Department of Transportation or United States Department of the Treasury with intent to defraud, in violation of 18 U.S.C. §§ 514(a) & 2 (Counts 7, 8, 9, 10, 11, 12 and 24). On October 29, 2004, the undersigned pronounced a sentence of 60 months imprisonment on Count One, and terms of 120 months on each of Counts 7-12 and 24, to be served concurrently with each other to produce a total term of 120 months, which shall run consecutively to the defendant's confinement for civil contempt ordered on June 8, 2004 (Judgment in Cr. No. 03-354-02 (JBS), entered Nov. 1, 2004, Docket Item 393), together with a fine, restitution, special assessment and supervised release not pertinent to the present proceeding. Mr. Lundy continues to be confined for civil contempt, and his credit for detention time served against his criminal sentence was interrupted when the Order for Contempt was filed on June 8, 2004. Mr. Lundy appealed his conviction on November 3, 2004 (id., Docket Item 401), and his appeal remains pending before the U.S. Court of Appeals for the Third Circuit at Appeal No. 04-4115.

discussed herein, the Court declines to recuse itself from hearing the merits of Mr. Lundy's petition.

## I. BACKGROUND

On May 6, 2003, Petitioner Lundy and eight other individuals were indicted on charges of having both produced and conspired to produce fraudulent money orders purporting to be authorized by the United States Department of Transportation and the United States Department of the Treasury [Docket Item 1]. Since the filing of the indictment, Mr. Lundy and several of his co-defendants engaged in a protracted campaign aimed at harassing numerous persons associated with the Court, including the undersigned, by, inter alia, sending fraudulent financial security arrangements and contracts.[2] To address this persistent disruptive conduct, the Court entered an Order on August 27, 2003 that enjoined Lundy and his co-defendants from "sending any written communications to this Court, to any judicial officer or employee of this Court . . . whether in an official or allegedly 'private' capacity . . . [w]hich attempts to create a lien or financial interest; or . . . [w]hich purports to state a contract with such recipient regarding any civil or commercial matter," and from "creating affidavits of debt or UCC Financing Statements

[2] This Court's May 24, 2004 Opinion in United States v. Oscar Harris, et al., Criminal No. 03-354 (JBS) [Docket Item 233], describes in detail the range of harassing conduct undertaken by Mr. Lundy and his co-defendants.

directed against the property of the undersigned, or any judicial officer or employee of this Court, . . . based upon the above-described security agreements or contracts or liens however entitled" (the "August 27 Order").

Notwithstanding the requirements of the August 27 Order, Mr. Lundy mailed to Richard DiGiacomo, an employee of Pretrial Services, a document entitled "Notice and Acceptance of Offer," which demanded that Mr. DiGiacomo pay Mr. Lundy $3,730,000,000.00 in connection with duties that Mr. DiGiacomo performed when gathering information regarding suitable conditions of bail for Mr. Lundy prior to his criminal trial, and threatened that Mr. DiGiacomo's failure to pay Mr. Lundy would result in a filing of involuntary bankruptcy against him. At a hearing convened on June 7, 2004, Mr. DiGiacomo testified that he considered the document that Mr. Lundy mailed him to be a financial threat directed at him arising from his employment as a Pretrial Services Officer of this Court, performing his functions in this case.

Based on Mr. Lundy's admission that he created and mailed the "Notice and Acceptance of Offer" document, as well as the contents of the document itself and Mr. DiGiacomo's testimony, the Court found in its June 7, 2004 Contempt Order [Docket Item 242] that there was clear and convincing evidence that Lundy had knowingly acted in civil contempt of the August 27 Order. The

Contempt Order required as the sanction for Mr. Lundy's contempt that Mr. Lundy be incarcerated until he purged himself of his contempt by withdrawing the "Notice and Acceptance of Offer" document and affirming, under penalty of perjury, that he would not create similar documents threatening the financial interests of the undersigned, other judicial officers and employees of the Court, and other persons associated with his criminal case. [Id.] The Contempt Order further stated that this sanction would immediately terminate "upon the Court's approval of defendant Lundy's purging of the contempt," and that the entry of the contempt order would "interrupt the accumulation of his eventual credit for time served by virtue of [Mr. Lundy's] pretrial detention" should he be convicted of the crimes with which he was charged. [Id.]

On July 2, 2004, Mr. Lundy was found guilty of producing and conspiring to produce fraudulent money orders, and was sentenced on October 29, 2004 to a term of imprisonment of 120 months, which was to run consecutively to his imprisonment under the Contempt Order [Docket Item 393]. Mr. Lundy has not, to this date, purged his contempt, nor has he suggested any alternative means of purging his contempt by refraining from producing or procuring and sending documents that purport to establish judgments or lien claims against persons involved in this case. On August 31, 2007, Mr. Lundy filed the instant petition for a

writ of habeas corpus [Docket Item 1] challenging the Contempt Order. The Government filed its response on October 9, 2007 [Docket Item 4]. The Court convened a hearing on October 29, 2007, at which time counsel was appointed to represent Mr. Lundy under the Criminal Justice Act, 18 U.S.C. § 3006A.

**II. DISCUSSION**

In his petition, Mr. Lundy argues that, pursuant to 28 U.S.C. § 455(a), the undersigned should recuse himself from further consideration of this case on account of alleged prejudice against the petitioner. (Pet. ¶¶ 13-14.) Mr. Lundy argues that under section 455(a) and cases interpreting it, a judge is disqualified from participating in a case not only where there is actual bias or prejudice against a party, but when consideration of the case would suggest the appearance of partiality. (Id. at ¶ 13.) The exact nature of the partiality or appearance of partiality that Petitioner alleges in this case is difficult to decipher from the petition.[3] However, in view of the generous latitude accorded to pro se filings, see United

[3] The petition's numerous accusations include nonspecific, conclusory allegations of bias, such as Mr. Lundy's accusation that the undersigned "has acted unconstitutionally attempting to impair [Mr. Lundy's] defense." (Pet. ¶ 27.) Mr. Lundy also suggests, again without providing details to clarify his allegations, that the Court's bias stems from its "acceptance of remuneration by foreign powers in non[-]redeemable, dishonored, interagency, international bills of credit" and its unspecified "collusion" with, inter alia, the prosecutor and the United States Treasury Secretary. (Id. at ¶¶ 35-36.)

States v. Garth, 188 F.3d 99, 106 n.7 (3d Cir. 1999), the Court construes Mr. Lundy's argument as alleging two sources of bias against the petitioner: (1) the alleged bias stemming from Petitioner's filing of a civil lawsuit against multiple attorneys and judicial officers, including the undersigned, in April 2004; and (2) the alleged prejudice of this Court against Petitioner resulting from the Court's prior dealings with Petitioner, in which the Court found Petitioner to be in civil contempt of its August 27 Order.

**A. Standard for Recusal under 28 U.S.C. § 455**

Section 455 provides in relevant part:

> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
>
> (b) He shall also disqualify himself in the following circumstances:
>
>> (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding; . . .

28 U.S.C. § 455. While section 455(b)(1) requires the disqualification of a judge who has "a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts," section 455(a) is a broader, "catchall" recusal provision that requires disqualification not only where actual partiality exists, but where the judge's consideration of the case risks imparting the appearance of bias. Liteky v. United States, 510

U.S. 540, 548 (1994). "The test for recusal under § 455(a) is whether a reasonable person, with knowledge of all the facts, would conclude that the judge's impartiality might reasonably be questioned." United States v. Wecht, 484 F.3d 194, 214 (3d Cir. 2007) (citation omitted).

In determining whether a reasonable person would question the impartiality of a judge under particular circumstances, a distinction is drawn between alleged bias resulting from "a source outside judicial proceedings," on the one hand, and alleged bias stemming from prior proceedings held before the judge in question. Liteky, 510 U.S. at 554. Under this "extrajudicial source" doctrine, a party that does not cite an extrajudicial source of the alleged prejudice has the substantial burden of proving that "the Judge's opinions and remarks [] reveal a deep-seated or high degree of favoritism or antagonism that would make fair judgment impossible" in order to warrant disqualification. Wecht, 484 F.3d at 213 (citing Liteky, 510 U.S. at 555-56) (internal quotations omitted); see also LoCascio v. United States, 473 F.3d 493, 495 (2d Cir. 2007) (stating that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion") (citation omitted).

With these considerations in mind, the Court proceeds to address the arguments regarding prejudice or perceived prejudice it understands Petitioner to be alleging.

**B. Petitioner's Civil Lawsuit**

In his petition, Mr. Lundy argues that the Court should disqualify itself from addressing further proceedings in the instant matter on account of the civil lawsuit that Mr. Lundy filed against the undersigned in April 2004. (Pet. ¶ 10.) Specifically, Mr. Lundy asks the Court to address why his "lien against the so-called judge Jerome B. Simandle has not resulted in the appropriate recusal." (Id.)

The Court addressed this issue at significant length in its May 25, 2004 Opinion [Docket Item 233], prior to Mr. Lundy's contempt hearing on June 7, 2004. As the Court noted in that Opinion, the weight of authority on this issue holds that "[a] rule of automatic judicial recusal would allow criminal defendants to handcuff the judiciary by the use of the tool of civil suits in conjunction with the rule of disqualification to forestall criminal proceedings" [id.] (internal quotations and citations omitted). The Court determined that there was no reason for the undersigned to disqualify himself solely on account of the filing of the civil suit, noting in particular that

> recusal is inappropriate because it would not solve the underlying problem . . . . [R]ecusal would not just delay and disrupt the process in accordance with the defendants' wishes, but it would, based upon the past and continuing conduct of these five defendants, add one new judge to the line of judicial targets of the defendants' misconduct.

[Id.]. This observation was based upon the defendants' financial threats and fraudulent lien claims filed against other judicial officers who had performed judicial duties in this case, either while grand jury matters were pending or during the post-arrest phases, including the Honorable Freda Wolfson, former District Judge Stephen M. Orlofsky, and former Magistrate Judge Joel B. Rosen.

In light of its extensive treatment of this issue in its May 25 Opinion, it is not necessary for the Court to retrace its analysis as to why Mr. Lundy's 2004 civil suit, which was immediately dismissed as frivolous, provides insufficient grounds for recusal in this case. In addition to the reasoning set out in that Opinion, however, the Court notes that the argument for recusal is even weaker now than it was at the time of the May 25 Opinion. Petitioner's civil lawsuit was filed just over one month before the Court's first examination of this issue, and was dismissed five days before the Opinion was filed. Given that over three years have passed since the dismissal of Mr. Lundy's civil lawsuit, the Court's conclusion that "the lawsuit filed by [Petitioner has] . . . not produced a personal bias that affects my administration of justice in this case" is even more compelling today than it was in 2004 [id.]. Thereafter, the undersigned presided over the jury trial of Mr. Lundy and four co-defendants and pronounced a sentence in accordance with law

and with utmost respect for defendants' rights and dignity. The Court finds that the impartiality of the undersigned is not reasonably called into question by Petitioner's filing of a frivolous civil lawsuit more than three years ago, and accordingly concludes that recusal under section 455(a) is unwarranted.

**C. The Court's Prior Experience with Petitioner**

The Court now addresses the allegation, at least implicit in Mr. Lundy's petition, that its prior experience with Mr. Lundy in his criminal trial and in holding him in contempt militates in favor of recusal. Because this alleged ground for disqualification focuses on prior judicial proceedings, the Court's assessment of this argument is controlled by the extrajudicial source doctrine, under which "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion" and in the absence of "deep-seated and unequivocal antagonism that would render fair judgment impossible," recusal is inappropriate. Liteky, 510 U.S. at 555-56.

The Court finds that there is nothing in this case that would even remotely suggest to the reasonable person that the Court harbors such antagonism for Mr. Lundy. Although the Contempt Order against Mr. Lundy indicates the Court's unwillingness to tolerate actions that openly disregard its

orders, the finding of contempt stemmed not from any hostility toward the petitioner, but from the Court's responsibility to ensure the orderly administration of justice. That Contempt Order was entered only after about a year of Mr. Lundy's well-documented efforts to disrupt the administration of justice inside and outside the courtroom, and only after numerous warnings were given to him, and only after notice and a hearing, at which Mr. Lundy was represented by counsel. "Merely because a trial judge is familiar with a party and his legal difficulties through prior judicial hearings, or has found it necessary to cite a party for contempt, does not automatically or inferentially raise the issue of bias." United States v. Beneke, 449 F.2d 1259, 1261 (8th Cir. 1971); see also Lewis v. Tuscan Dairy Farms, Inc., 25 F.3d 1138, 1141 (2d Cir. 1994) (trial judge's exposure to litigant in unrelated proceeding, in which he held litigant in contempt, is insufficient grounds for recusal); cf. LoCascio, 473 F.3d at 495 (order of contempt entered against litigant's attorney does not warrant recusal).

Just as the mere entry of an order of contempt against a party does not, in the abstract, exhibit the level of antagonism necessary for recusal based on extrajudicial sources, the actual Contempt Order entered against Mr. Lundy in this case does not demonstrate any bias against Mr. Lundy warranting disqualification of the undersigned. In response to the

financial harassment committed by Mr. Lundy and his co-defendants pending their criminal trial, this Court in its August 27 Order enjoined the petitioner from sending misleading and fraudulent documents to the Court's judicial officers and employees [Docket Item 107]. Notwithstanding his awareness of the requirements of the August 27 Order, Mr. Lundy acknowledged that he later mailed a Court employee a document demanding a payment of $3,730,000,000.00. The Contempt Order subsequently entered against Mr. Lundy was narrowly crafted to address Mr. Lundy's contempt - Mr. Lundy could purge his contempt simply by withdrawing his most recent harassing mailing and promising to refrain from sending similar documents in the future [Docket Item 242]. In short, the Contempt Order effectively gave Mr. Lundy the keys to his own cell, which he could have employed as soon as the Order was entered. As this brief summary indicates, the Order was rooted in a concern for effective judicial administration in response to tactics designed to disrupt or intimidate the forum, not a personal bias against Mr. Lundy, and its provisions were aimed specifically and narrowly at curbing Mr. Lundy's inappropriate conduct. That Mr. Lundy has, thus far, refused to take the exceedingly modest steps required to purge his contempt, or to indicate his agreement to simply stop the offending behavior, does not alter the calculus and turn a

narrowly crafted order into an expression of "deep-seated and unequivocal antagonism." Liteky, 510 U.S. at 556.[4]

The Court's experience in the earlier judicial proceedings in this action that ultimately resulted in Mr. Lundy's conviction likewise fails to demonstrate any personal antagonism. Mr. Lundy's petition contains various conclusory allegations ranging from the Court's "unconstitutional[] impair[ment]" of Mr. Lundy's defense to its unspecified "collusion" with various government officials, but there is simply nothing in the record to support these statements or otherwise suggest that the Court has fallen short of its duty to be impartial. (Pet. ¶¶ 27, 36.) In view of the requirement that a movant for recusal alleging bias stemming from a court's prior judicial experience with a party must demonstrate that the court's "favoritism or antagonism . . . make fair judgment impossible," Liteky, 510 U.S. at 555, the Court

---

[4] It is likewise significant that the jury found, unanimously and beyond a reasonable doubt, that Mr. Lundy "obstructed or impeded the administration of justice during the course of the investigation or prosecution of this case." (Additional Sentencing Facts Verdict Form, filed July 16, 2004, Cr. No. 03-354 (JBS), Docket Item 316.) Concerning such obstruction of justice, the United States alleged 14 occasions in which the defendants allegedly filed false UCC-1 statements, threatened involuntary bankruptcy, and made other financial threats directed at the federal prosecutors, federal agents, and a former federal judicial officer. (Amended Notice of Sentencing Factors, Cr. No. 03-354 (JBS), dated July 6, 2004, Docket Item 291). Mr. Lundy was charged with 10 of those acts of attempted obstruction of justice. (Id. ¶¶ 3C, E, F, H, I, J, K, L, M, N.) Consistent with the jury's findings, this Court enhanced Mr. Lundy's sentencing guideline range pursuant to U.S.S.G. § 3C1.1 (obstructing or impeding the administration of justice).

finds that Mr. Lundy's vague accusations do not provide a basis for disqualification in this case.

Finally, the Court notes that it does not perceive Mr. Lundy's past misconduct as being motivated by Mr. Lundy's personal animosity toward the undersigned. I fully understand that his obstruction is not directed toward my person, but instead has been directed toward every judicial officer, due to Mr. Lundy's professed belief that no federal court is empowered to adjudicate his criminal case. As the record has shown, Mr. Lundy has repeatedly obstructed the prosecution and adjudication of his case, or attempted to do so, in unlawful ways. Understanding that his obstruction and threats arise from his structural objection to any judge sitting in judgment of him, I have no cause to react with any personal animosity or bias toward him, and have harbored none.

**III. CONCLUSION**

For the reasons discussed above, the Court finds that recusal of the undersigned is not required under 28 U.S.C. § 455(a). To the extent that Mr. Lundy's habeas petition requests such recusal, therefore, the Court will deny the request. The accompanying Order will be entered.

**November 5, 2007**
Date

**s/ Jerome B. Simandle**
JEROME B. SIMANDLE
U.S. District Judge